**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANAS ELHADY**; | ) | |
| | ) | |
| Plaintiff, | ) | **Case No.  17-cv-12969** |
| v. | ) | **Hon. Mark A. Goldsmith** |
| | ) | **Mag. Anthony P. Patti** |
| **UNIDENTIFIED CBP AGENTS**, in their | ) | |
| individual capacities, only; | ) | |
| | ) | |
| Defendants. | ) | |

_____/

**FIRST AMENDED COMPLAINT**

Plaintiff, **Anas Elhady**, by and through his attorneys, CAIR Legal Defense Fund ("CAIR"), states as follows:

**Nature of this Action**

1.      This is an action arising under the Fifth and Eighth Amendments to the Constitution of the United States.

2.      Plaintiff seeks damages pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1357.

**Jurisdiction and Venue**

3.      Under U.S. Const. Art. III §2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution.

1

4.     Jurisdiction is proper pursuant to 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Constitution and federal common law.

5.     A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

6.     This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Michigan.

7.     Venue is proper under 42 U.S.C. § 1391(e) as to all Defendants because Defendants are agents or employees of agencies of the United States sued in their individual capacities and because this judicial district is where a substantial part of the events or omissions giving rise to the claims occurred.

## Parties

8.     Plaintiff Anas Elhady is a United States Citizen and a Muslim residing in Wayne County, Michigan.

9.     Defendants Unidentified CBP Agents are employed by Customs and Border Protection ("CBP"), and are the CBP agents responsible for (1) the detention and confinement of Plaintiff Elhady, described below, (2) the conditions of Plaintiff Elhady's detention and confinement (including the temperature and lighting in the room where and at the time Plaintiff Elhady

2

was detained and confined), and, (3) for the denial of medical treatment for Plaintiff Elhady.  The Unidentified CBP Agents are being sued in their individual capacities, only.

## **Factual Background**

10.    On April 11, 2015, Mr. Elhady was referred to secondary inspection, handcuffed and detained by Unidentified CBP Agents at the border stop at the Ambassador Bridge Port of Entry in Detroit, Michigan, when he attempted to re-enter the United States after a brief vacation in Canada.

11.    After Unidentified CBP Agents confiscated Mr. Elhady's jacket and shoes, they detained and confined him in isolation in a small, freezing cold holding cell with excessively bright lights for approximately four to six hours.

12.    Unidentified CBP Agents subjected Mr. Elhady to extreme sensory deprivation, psychological torture and isolation (known as "White Torture"), as a form of cruel and unusual punishment and torture by isolating him for a long period of time with excessively bright lights and freezing temperatures.

13.    After several hours of being confined in the holding cell, Mr. Elhady knocked on the door repeatedly and begged for someone to help him and provide him with medical treatment.

14.    However, Unidentified CBP Agents ignored his pleas for help and denied him medical treatment.

15. Mr. Elhady's body began shaking uncontrollably and he felt that his body was "shutting down."

16. Mr. Elhady thought he was going to die.

17. After several hours, Mr. Elhady suffered from hypothermia and he fell unconscious.

18. Some time after Mr. Elhady fell unconscious, Unidentified CBP Agents finally opened the door and woke him up.

19. The Unidentified CBP Agents demanded that he stand up; however, Mr. Elhady was unable to get up because his body was still shaking uncontrollably.

20. Mr. Elhady repeatedly begged for an ambulance to take him to the hospital but Unidentified CBP Agents again ignored his pleas for help and medical treatment.

21. Finally, Mr. Elhady was taken to an ambulance, only to be handcuffed to the bed inside the ambulance.

22. Mr. Elhady was taken to a local hospital, where he was handcuffed to a chair in the waiting room of the hospital.

23. Upon being admitted, a concerned nurse asked Mr. Elhady why his lips were blue.

24. After being attended to by nurses and physicians, and prescribed the medication that he needed, Mr. Elhady was again handcuffed to a chair inside a vehicle and transported back to the Ambassador Bridge.

25. Upon information and belief, Mr. Elhady was subjected to cruel and unusual punishment and white torture because his name was added to the federal terror watch list, which effectively directs Customs and Border Protection Officers to treat thousands of innocent Americans, including Mr. Elhady, who have never been charged or convicted with any terrorism-related offense, as extremely dangerous.

26. Mr. Elhady is routinely referred to secondary inspection, handcuffed and detained by CBP at land border crossings for approximately four to twelve hours when he attempts to re-enter the United States from Canada.

27. At no time was Mr. Elhady given notice of the factual basis for his placement on the federal terror watch list, and at no time was he offered a meaningful opportunity to contest his designation.

28. Moreover, at no time was Mr. Elhady given notice of the deprivation of his liberty interests or violation of his constitutional rights.

## Count I
## Violation of the Fifth and Eighth Amendment to the United States Constitution
## (Due Process and Cruel and Unusual Punishment)

29.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

30.     Under the Eighth Amendment, United States citizens have the right to be free from torture and cruel and unusual punishment.

31.     While the Eighth Amendment only applies to post-conviction criminal punishments, the Fifth Amendment's Due Process Clause prohibits the government from imposing torture or cruel and unusual confinement conditions on all other detainees. *See e.g.*, *City of Revere v. Massachusetts Gen. Hospital*, 463 U. S. 239, 244 (1983) ("due process rights" of an un-convicted person "are at least as great as the Eighth Amendment protections available to a convicted prisoner"); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt."); *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement...the Eighth Amendment standard provides the benchmark for such claims.").

6

32.    The Eighth Amendment also imposes a duty on Defendants to provide humane conditions of confinement, including ensuring, among other things, adequate confinement temperatures and access to medical treatment.

33.    Defendants, acting under color of state law, took Plaintiff into physical custody.  In doing so, they established a special custodial relationship with Plaintiff, giving rise to affirmative duties on their part to ensure that Plaintiff is provided with humane conditions of confinement and the necessary medical treatment to secure the constitutionally protected rights identified above.

34.    Defendants, acting under color of state law, violated Plaintiff's above-stated constitutionally protected rights by wrongfully subjecting him to white torture and cruel and unusual punishment, denying him humane conditions of confinement and denying him medical treatment.

35.    Despite Plaintiffs' repeated pleas and requests for help and medical treatment, Defendants failed to take adequate measures to ensure that Plaintiff was being provided with humane conditions of confinement and medical treatment.

36.    Defendants subjectively perceived, or should have subjectively perceived, Plaintiff's repeated pleas regarding the conditions of his confinement and denial of medical treatment.

37.     Defendants' acts and omissions were sufficiently harmful to evidence a substantial risk of serious harm.

38.     Defendants' acts and omissions were sufficiently harmful to offend evolving standards of decency in violation of the Eighth Amendment.

39.     Defendants' actions while acting under color of state law, in subjecting Plaintiff to white torture, denying him humane conditions of confinement, and denying him medical treatment, amount to cruel and unusual punishment and excessive force in violation of his constitutionally protected rights as stated above.

40.     Defendants' conduct as outlined above, was so grossly incompetent, inadequate, or excessive so as to shock the conscience or to be intolerable to fundamental fairness and violates the Eighth Amendment prohibition against cruel and unusual punishment.

41.     Defendants, acting under the color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of depriving Plaintiff and other American Muslims wrongfully designated on the federal terror watch list without due process from humane conditions of confinement.

42.     Defendants' actions described above were carried out willfully and with wanton disregard and with the spirit of gross negligence, and were the

direct and deliberate cause of the constitutional deprivations Plaintiff's liberty and the direct cause of Plaintiff's cruel and unusual punishment and excessive force.

43.     As a direct and proximate result of Defendants' actions described above, Plaintiff was deprived of his constitutionally protected rights as described above, by Defendants.

44.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered extreme emotional distress, medical expenses, and other consequential damages.

45.     Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff requests this Honorable Court grant compensatory and punitive damages against Defendants, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his favor against Defendants and enter an Order awarding the following relief:

1.    An award of compensatory and punitive damages;

2.    A trial by jury;

3.    An award of attorneys' fees, costs, and expenses of all litigation; and,

4.    All such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

NOW COMES Plaintiff, by and through his undersigned counsel, and hereby demands trial by jury of the above-referenced causes of action.

Respectfully submitted,

CAIR LEGAL DEFENSE FUND

BY:      /s/ Lena Masri
LENA F. MASRI (P73461)
GADEIR I. ABBAS (VA: 81161)
AHMED M. MOHAMED (LA: 36590)
Attorneys for Plaintiff
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

*Gadeir Abbas is licensed in VA, not in D.C.  Practice limited to federal matters.  He is admitted to practice in this Court.*

Dated:  February 27, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2018, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Michigan using the ECF System, which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

*/s/ Lena Masri*