# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **ANAS ELHADY**; | ) |
| | ) |
| Plaintiff, | ) Case No. 17-cv-12969 |
| v. | ) Hon. Mark A. Goldsmith |
| | ) Mag. Anthony P. Patti |
| **MATTHEW PEW**; | ) |
| **BLAKE BRADLEY**; | ) |
| **JOSEPH PIRANEO**; | ) |
| **DANIEL BECKHAM**; | ) |
| **TONYA LAPSLEY**; | ) |
| **NYREE IVERSON**; | ) |
| **WALTER KEHR**; | ) |
| **SCOTT ROCKY**; | ) |
| **JASON FERGUSON**; | ) |
| in their individual capacities, only; | ) |
| | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

Plaintiff, **Anas Elhady**, by and through his attorneys, CAIR Legal Defense Fund ("CAIR"), states as follows:

## Nature of this Action

1. This is an action arising under the Fifth and Eighth Amendments to the Constitution of the United States.

2. Plaintiff seeks damages pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1357.

## Jurisdiction and Venue

3. Under U.S. Const. Art. III §2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution.

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Constitution and federal common law.

5. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

6. This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Michigan.

7. Venue is proper under 42 U.S.C. § 1391(e) as to all Defendants because Defendants are agents or employees of agencies of the United States sued in their individual capacities and because this judicial district is where a substantial part of the events or omissions giving rise to the claims occurred.

## Parties

8. Plaintiff Anas Elhady is a United States Citizen and a Muslim residing in Wayne County, Michigan.

9. Defendants are officers or agents employed by Customs and Border Protection ("CBP"), and are the CBP agents responsible for (1) the detention and confinement of Plaintiff Elhady, described below, (2) the conditions of Plaintiff Elhady's detention and confinement (including the temperature and lighting in the room where and at the time Plaintiff Elhady was detained and confined), and, (3) for the denial of medical treatment for Plaintiff Elhady. All Defendants are being sued in their individual capacities, only.[1] *See generally Exhibit A.*

10. Defendant Matthew Pew was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Pew resides in Michigan. Upon information and belief, Defendant Pew was responsible for the primary inspection of Plaintiff Elhady and referring him to secondary inspection. Defendant Pew is being sued in his individual capacity. *See* Exhibit B at 6.

---

[1] Plaintiff's First Amended Complaint was filed against "Unidentified CBP Agents." Pursuant to this Court's Order Granting Plaintiff's Motion for Leave to Take Limited Discovery [Dkt. 25], Plaintiff issued a subpoena to obtain the names of all the U.S Customs and Border Protection officers responsible for the claims alleged in the First Amended Complaint. Some of that production is attached to the Second Amended Complaint as Exhibit A and Exhibit B. The named Defendants in this Second Amended Complaint are included based upon the information provided to Plaintiff by the United States Attorney's Office in the Eastern District of Michigan in response to Plaintiff's subpoena. To the extent that additional CBP officers are determined to be responsible for the claims alleged in Plaintiff's Second Amended Complaint through discovery, Plaintiff reserves his right to add those officers as additional named defendants.

11. Defendant Blake Bradley was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Bradley resides in Michigan. Defendant Bradley was responsible for Plaintiff's secondary inspection and confinement conditions. Defendant Bradley is being sued in his individual capacity. *Id.*

12. Defendant Joseph Piraneo was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Piraneo resides in Michigan. Defendant Piraneo was responsible for Plaintiff's secondary inspection and confinement conditions. Defendant Piraneo is being sued in his individual capacity. *Id.*

13. Defendant Daniel Beckham was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Beckham resides in Michigan. Defendant Beckham was responsible for Plaintiff's secondary inspection and confinement conditions. Defendant Beckham is being sued in his individual capacity. *Id.*

14. Defendant Tonya Lapsley was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Lapsley resides in Michigan. Defendant Lapsley was the supervising officer and was responsible for Plaintiff's

secondary inspection and confinement conditions.  Defendant Lapsley is being sued in her individual capacity.  *Id.*

15. Defendant Nyree Iverson was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Iverson resides in Michigan.  Defendant Iverson was the Watch Commander on duty and was responsible for Plaintiff's secondary inspection and confinement conditions.  Defendant Iverson is being sued in his individual capacity.  *Id.* at 7.

16. Defendant Walter Kehr was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Kehr resides in Michigan.  Defendant Kehr was responsible for Plaintiff's secondary inspection and confinement conditions.  Defendant Kehr is being sued in his individual capacity.  *Id.* at 7.

17. Defendant Scott Rocky was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Bradley resides in Michigan.  Defendant Bradley was responsible for Plaintiff's secondary inspection and confinement conditions.  Defendant Bradley is being sued in his individual capacity.  *Id.* at 7.

18. Defendant Jason Ferguson was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon

information and belief, Defendant Bradley resides in Michigan. Defendant Bradley was responsible for Plaintiff's secondary inspection and confinement conditions. Defendant Bradley is being sued in his individual capacity. *Id.* at 6

## **Factual Background**

19. On April 10, 2015, Mr. Elhady crossed the Detroit-Windsor port of entry into Canada for a brief vacation.

20. The Canadian inspection officer stopped Mr. Elhady, questioned him, and asked Mr. Elhady to provide the exact time that he expected to cross the border back into the United States.

21. Mr. Elhady responded that he expected to return around midnight.

22. The Canadian inspection officer provided Mr. Elhady with a phone number and instructed him to call that number if he plans on crossing either before or after midnight.

23. Upon information and belief, the Canadian inspection officer informed Defendants that Mr. Elhady intended to cross back into the United States at or around midnight.

24. Accordingly, Defendants knew and expected Mr. Elhady to cross back into the United States at or around midnight.

25. Upon approaching the primary inspection booth when he attempted to re-enter the United States, Mr. Elhady handed Defendant Pew his identification documents.

26. Upon seeing Mr. Elhady's identification documents, Defendant Pew immediately demanded that Mr. Elhady place his hands on his steering wheel, called for backup and referred him to secondary inspection.

27. Mr. Elhady's vehicle was immediately surrounded by Defendants, all of whom were armed.

28. Defendants ordered Mr. Elhady to step out of his vehicle and walk to the back of the vehicle, where he was handcuffed.

29. After Defendants confiscated Mr. Elhady's jacket and shoes, they detained and confined him in isolation in a small, freezing cold holding cell with excessively bright lights for approximately four to six hours, possibly longer.

30. Upon information and belief, because Defendants knew that Mr. Elhady intended to return to the United States at or around midnight, they decreased the temperature in the holding cell to freezing temperatures prior to Mr. Elhady's arrival.

31. Defendants subjected Mr. Elhady to extreme sensory deprivation, psychological torture and isolation (known as "White Torture"), as a form of

cruel and unusual punishment and torture by isolating him in a holding cell for a long period of time with excessively bright lights and freezing temperatures.

32. After several hours of being confined in the holding cell, Mr. Elhady knocked on the door repeatedly and begged for someone to help him and provide him with medical treatment.

33. However, Defendants ignored his pleas for help and denied him medical treatment.

34. Mr. Elhady's body began shaking uncontrollably and he felt that his body was "shutting down."

35. Mr. Elhady thought he was going to die.

36. After several hours, Mr. Elhady suffered from hypothermia and he fell unconscious.

37. Some time after Mr. Elhady fell unconscious, Defendants finally opened the door and woke him up.

38. Defendants demanded that he stand up; however, Mr. Elhady was unable to get up because his body was still shaking uncontrollably.

39. Mr. Elhady repeatedly begged for an ambulance to take him to the hospital but Defendants again ignored his pleas for help and medical treatment.

40. Mr. Elhady suffered from dehydration, shock and hypothermia as a direct result of the conditions in which he was confined.

41. Finally, Mr. Elhady was taken to an ambulance, only to be handcuffed to the bed inside the ambulance.

42. Upon information and belief, Defendants Kehr and Rocky handcuffed Mr. Elhady in the ambulance at the instruction of Defendants Iverson and Lapsley and accompanied Mr. Elhady to the hospital.

43. Mr. Elhady was taken to a local hospital, where he was handcuffed to a chair in the waiting room of the hospital.

44. Upon information and belief, Defendants Kehr and Rocky handcuffed Mr. Elhady to a chair in the waiting room at the instruction of Defendants Iverson and Lapsley.

45. Upon being admitted to the hospital, a concerned nurse asked Mr. Elhady why his lips were blue.

46. After being administered life-saving treatment and prescribed the medication that he needed, Mr. Elhady was again handcuffed to a chair inside a vehicle and transported back to the Ambassador Bridge.

47. Upon information and belief, Defendants Kehr and Rocky handcuffed Mr. Elhady in the vehicle at the instruction of Defendants Iverson and Lapsley.

48. At no point during the April 11, 2015 incident did Defendants find any contraband or evidence indicating illegal or criminal activity by Mr. Elhady.

Per Defendants own TECS records, all searches of Mr. Elhady and his vehicle came back negative.

49. Upon information and belief, Mr. Elhady was subjected to cruel and unusual punishment and white torture because his name was added to the federal terror watch list, which directs Customs and Border Protection Officers to treat thousands of innocent Americans, including Mr. Elhady, who have never been charged or convicted with any terrorism-related offense, as extremely dangerous.

**Count I**
**Violation of the Fifth and Eighth Amendment to the United States Constitution**
**(Due Process and Cruel and Unusual Punishment)**

50. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

51. Under the Eighth Amendment, United States citizens have the right to be free from torture and cruel and unusual punishment.

52. While the Eighth Amendment only applies to post-conviction criminal punishments, the Fifth Amendment's Due Process Clause prohibits the government from imposing torture or cruel and unusual confinement conditions on all other detainees. *See e.g.*, *City of Revere v. Massachusetts Gen.*

*Hospital*, 463 U. S. 239, 244 (1983) ("due process rights" of an un-convicted person "are at least as great as the Eighth Amendment protections available to a convicted prisoner"); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt."); *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement...the Eighth Amendment standard provides the benchmark for such claims.").

53. The Eighth Amendment also imposes a duty on Defendants to provide humane conditions of confinement, including ensuring, among other things, adequate confinement temperatures and access to medical treatment.

54. Defendants, acting under color of state law, took Plaintiff into physical custody. In doing so, they established a special custodial relationship with Plaintiff, giving rise to affirmative duties on their part to ensure that Plaintiff is provided with humane conditions of confinement and the necessary medical treatment to secure the constitutionally protected rights identified above.

55. Defendants, acting under color of state law, violated Plaintiff's above-stated constitutionally protected rights by wrongfully subjecting him to

white torture and cruel and unusual punishment, denying him humane conditions of confinement and denying him medical treatment.

56. Despite Plaintiffs' repeated pleas and requests for help and medical treatment, Defendants failed to take adequate measures to ensure that Plaintiff was being provided with humane conditions of confinement and medical treatment.

57. Defendants subjectively perceived, or should have subjectively perceived, Plaintiff's repeated pleas regarding the conditions of his confinement and denial of medical treatment.

58. Defendants' acts and omissions were sufficiently harmful to evidence a substantial risk of serious harm.

59. Defendants' acts and omissions were sufficiently harmful to offend evolving standards of decency in violation of the Eighth Amendment.

60. Defendants' actions while acting under color of state law, in subjecting Plaintiff to white torture, denying him humane conditions of confinement, and denying him medical treatment, amount to cruel and unusual punishment and excessive force in violation of his constitutionally protected rights as stated above.

61. Defendants' conduct as outlined above, was so grossly incompetent, inadequate, or excessive so as to shock the conscience or to be

intolerable to fundamental fairness and violates the Eighth Amendment prohibition against cruel and unusual punishment.

62. Defendants' actions described above were carried out willfully and with wanton disregard and with the spirit of gross negligence, and were the direct and deliberate cause of the constitutional deprivations Plaintiff's liberty and the direct cause of Plaintiff's cruel and unusual punishment and excessive force.

63. As a direct and proximate result of Defendants' actions described above, Plaintiff was deprived of his constitutionally protected rights as described above, by Defendants.

64. As a direct and proximate result of Defendants' actions, Plaintiff has suffered extreme emotional distress, medical expenses, and other consequential damages.

65. Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff requests this Honorable Court grant compensatory and punitive damages against Defendants, plus all such other

relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his favor against Defendants and enter an Order awarding the following relief:

1. An award of compensatory and punitive damages;
2. A trial by jury;
3. An award of attorneys' fees, costs, and expenses of all litigation; and,
4. All such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

NOW COMES Plaintiff, by and through his undersigned counsel, and hereby demands trial by jury of the above-referenced causes of action.

Respectfully submitted,

CAIR LEGAL DEFENSE FUND

BY:    /s/ Lena Masri
LENA F. MASRI (P73461)
GADEIR I. ABBAS (VA: 81161)
AHMED M. MOHAMED (LA: 36590)
CAROLYN HOMER (DC: 1049145)
Attorneys for Plaintiff
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

*Gadeir Abbas is licensed in VA, not in D.C. Practice limited to federal matters. He is admitted to practice in this Court.*

*Ahmed Mohamed is licensed in LA & NY, not in D.C. Practice limited to federal matters. He is admitted to practice in this Court.*

Dated: June 29, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Michigan using the ECF System, which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

<u>/s/ Ahmed Mohamed</u>