# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**ANAS ELHADY,**

    Plaintiff,                  Civil No. 17-12969

v.                         Honorable Mark A. Goldsmith

**MATTHEW PEW,** *et al.,*       Mag. Judge Anthony P. Patti
*in their individual capacities, only,*

    Defendants.

## ANSWER TO SECOND AMENDED COMPLAINT

Defendant Scott Rocky, by and through his attorneys, Matthew Schneider, United States Attorney for the Eastern District of Michigan, and James J. Carty, Assistant United States Attorney, answers Plaintiff's Second Amended Complaint in this action as follows:

## NATURE OF THIS ACTION

1.    This is an action arising under the Fifth and Eighth Amendments to the Constitution of the United States.

**Response:**  Admitted that this is an action arising under the Fifth Amendment; otherwise denied because the Eighth Amendment only applies to post-conviction criminal punishments.

2.    Plaintiff seeks damages pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1357.

**Response:**  Admitted that these statutes may be the jurisdictional basis for Plaintiff's complaint, or part of such a basis; otherwise denied, and specifically denied that either statute serves as a stand-alone basis for Plaintiff to seek damages against any individual defendant.

## JURISDICTION AND VENUE

3.     Under U.S. Const. Art. III § 2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution.

**Response:**  Admitted.

4.     Jurisdiction is proper pursuant to 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Constitution and federal common law.

**Response:**  Admitted that the Court has jurisdiction under 28 U.S.C. § 1331; otherwise denied because neither *Bivens* nor the common law serve as independent jurisdictional grounds for Plaintiff's claims.

5.     A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

**Response:** Denied that any unlawful acts were committed by Mr. Rocky. Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the allegations.

6.     This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Michigan.

**Response:**  Admitted as to Mr. Rocky. Admitted upon information and belief as to the other individual defendants.

7.     Venue is proper under 42 U.S.C. § 1391(e) as to all Defendants because Defendants are agents or employees of agencies of the United States sued in their individual capacities and because this judicial district is where a substantial part of the events or omissions giving rise to the claims occurred.

**Response:**  Admitted as to Mr. Rocky. Admitted upon information and belief as to the other individual defendants.

## PARTIES

8.     Plaintiff Anas Elhady is a United States Citizen and a Muslim residing in Wayne County, Michigan.

**Response:**  Admitted upon information and belief because Mr. Rocky has reviewed the complaint in this case and notes that Mr. Elhady has made these assertions about his own background in the complaint.

9.     Defendants are officers or agents employed by Customs and Border Protection ("CBP"), and are the CBP agents responsible for (1) the detention and confinement of Plaintiff Elhady, described below, (2) the conditions of Plaintiff Elhady's detention and confinement (including the temperature and lighting in the room where and at the time Plaintiff Elhady was detained and confined), and, (3) for

the denial of medical treatment for Plaintiff Elhady. All Defendants are being sued in their individual capacities, only.[1] *See generally Exhibit A.*

**Response:**   Admitted that Mr. Rocky was employed as a CBPO by CBP on or around April 10, 2015, in Detroit, Michigan, that he arrived on shift at 6 a.m., checked on Mr. Elhady once, asked Mr. Elhady if Mr. Elhady needed medical assistance, and when Mr. Elhady stated that he did, Mr. Rocky requested such assistance and accompanied Mr. Elhady to the hospital for treatment; otherwise denied as to Mr. Rocky. Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of the remaining allegations against any other defendant and therefore denies the allegations as to the other defendants.

10.     Defendant Matthew Pew was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Pew resides in Michigan. Upon information and belief, Defendant Pew was responsible for the primary inspection of Plaintiff Elhady and referring him to secondary inspection. Defendant Pew is being sued in his individual capacity.  *See Exhibit B* at 6.

---

[1] Plaintiff's First Amended Complaint was filed against "Unidentified CBP Agents." Pursuant to this Court's Order Granting Plaintiff's Motion for Leave to Take Limited Discovery [Dkt. 25], Plaintiff issued a subpoena to obtain the names of all the U.S Customs and Border Protection officers responsible for the claims alleged in the First Amended Complaint. Some of that production is attached to the Second Amended Complaint as Exhibit A and Exhibit B. The named Defendants in this Second Amended Complaint are included based upon the information provided to Plaintiff by the United States Attorney's Office in the Eastern District of Michigan in response to Plaintiff's subpoena. To the extent that additional CBP officers are determined to be responsible for the claims alleged in Plaintiff's Second Amended Complaint through discovery, Plaintiff reserves his right to add those officers as additional named defendants.

**Response**: Admitted upon information and belief that Mr. Pew was a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan, on or around April 10, 2015. Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the allegations.

11.    Defendant Blake Bradley was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Bradley resides in Michigan. Defendant Bradley was responsible for Plaintiff's secondary inspection and confinement conditions. Defendant Bradley is being sued in his individual capacity. *Id.*

**Response**: Admitted upon information and belief that Mr. Bradley was a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan, on or around April 10, 2015. Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the allegations..

12.    Defendant Joseph Piraneo was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Piraneo resides in Michigan. Defendant Piraneo was responsible for Plaintiff's secondary inspection and confinement conditions. Defendant Piraneo is being sued in his individual capacity. *Id.*

**Response**: Admitted upon information and belief that Mr. Piraneo was a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan, on or around April 10, 2015. Mr. Rocky has no knowledge or information sufficient to

form a belief as to the truth of the remaining allegations and therefore denies the

allegations.

13.     Defendant Daniel Beckham was at all relevant times a CBP employee
working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon
information and belief, Defendant Beckham resides in Michigan. Defendant
Beckham was responsible for Plaintiff's secondary inspection and confinement
conditions. Defendant Beckham is being sued in his individual capacity. *Id.*

**<u>Response</u>:**  Admitted upon information and belief that Mr. Beckham was a

CBP employee working at the Ambassador Bridge port of entry in Detroit,

Michigan, on or around April 10, 2015. Mr. Rocky has no knowledge or information

sufficient to form a belief as to the truth of the remaining allegations and therefore

denies the allegations.

14.     Defendant Tonya Lapsley was at all relevant times a CBP employee
working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon
information and belief, Defendant Lapsley resides in Michigan. Defendant Lapsley
was the supervising officer and was responsible for Plaintiff's secondary inspection
and confinement conditions. Defendant Lapsley is being sued in her individual
capacity. *Id.*

**<u>Response</u>:**  Admitted upon information and belief that Ms. Lapsley was a

CBP employee working at the Ambassador Bridge port of entry in Detroit,

Michigan, on or around April 10, 2015. Mr. Rocky has no knowledge or information

sufficient to form a belief as to the truth of the remaining allegations and therefore

denies the allegations.

15.     Defendant Nyree Iverson was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Iverson resides in Michigan. Defendant Iverson was the Watch Commander on duty and was responsible for Plaintiff's secondary inspection and confinement conditions. Defendant Iverson is being sued in his individual capacity. *Id.* at 7.

**Response:** Admitted upon information and belief that Ms. Iverson was a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan, on or around April 10, 2015. Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the allegations.

16.     Defendant Walter Kehr was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Kehr resides in Michigan. Defendant Kehr was responsible for Plaintiff's secondary inspection and confinement conditions. Defendant Kehr is being sued in his individual capacity. *Id.* at 7.

**Response:** Admitted that Mr. Kehr was a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan, on or around April 10, 2015. Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the allegations.

17.     Defendant Scott Rocky was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Bradley resides in Michigan. Defendant Bradley was responsible for Plaintiff's secondary inspection and confinement conditions. Defendant Bradley is being sued in his individual capacity. *Id.* at 7.

**Response:** Admitted that Mr. Rocky was employed as a CBPO by CBP on or around April 10, 2015, in Detroit, Michigan, that he arrived on shift at 6 a.m., checked on Mr. Elhady once, asked Mr. Elhady if Mr. Elhady needed medical assistance, and when Mr. Elhady stated that he did, Mr. Rocky alerted his supervisors of the situation, requested such assistance and accompanied Mr. Elhady to the hospital for treatment; otherwise denied.

18.    Defendant Jason Ferguson was at all relevant times a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan. Upon information and belief, Defendant Bradley resides in Michigan. Defendant Bradley was responsible for Plaintiff's secondary inspection and confinement conditions. Defendant Bradley is being sued in his individual capacity. *Id.* at 6.

**Response:**  Admitted upon information and belief that Mr. Ferguson was a CBP employee working at the Ambassador Bridge port of entry in Detroit, Michigan, on or around April 10, 2015. Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the allegations.

## FACTUAL BACKGROUND

19.    On April 10, 2015, Mr. Elhady crossed the Detroit-Windsor port of entry into Canada for a brief vacation.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

20.     The Canadian inspection officer stopped Mr. Elhady, questioned him, and asked Mr. Elhady to provide the exact time that he expected to cross the border back into the United States.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

21.     Mr. Elhady responded that he expected to return around midnight.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

22.     The Canadian inspection officer provided Mr. Elhady with a phone number and instructed him to call that number if he plans on crossing either before or after midnight.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

23.     Upon information and belief, the Canadian inspection officer informed Defendants that Mr. Elhady intended to cross back into the United States at or around midnight.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations. Mr. Rocky specifically denies being a part of any such communications with Canadian authorities or related communications with or between other persons, and denies any personal knowledge of such communications.

24.    Accordingly, Defendants knew and expected Mr. Elhady to cross back into the United States at or around midnight.

**Response**:  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations. Mr.

Rocky specifically denies being a part of any such communications with Canadian

authorities or related communications with or between other persons, and denies any

personal knowledge of such communications.

25.    Upon approaching the primary inspection booth when he attempted to re-enter the United States, Mr. Elhady handed Defendant Pew his identification documents.

**Response**:  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations.

26.    Upon seeing Mr. Elhady's identification documents, Defendant Pew immediately demanded that Mr. Elhady place his hands on his steering wheel, called for backup and referred him to secondary inspection.

**Response**:  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations.

27.    Mr. Elhady's vehicle was immediately surrounded by Defendants, all of whom were armed.

**Response**:  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations.

28.     Defendants ordered Mr. Elhady to step out of his vehicle and walk to the back of the vehicle, where he was handcuffed.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations.

29.     After Defendants confiscated Mr. Elhady's jacket and shoes, they detained and confined him in isolation in a small, freezing cold holding cell with excessively bright lights for approximately four to six hours, possibly longer.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations.

30.     Upon information and belief, because Defendants knew that Mr. Elhady intended to return to the United States at or around midnight, they decreased the temperature in the holding cell to freezing temperatures prior to Mr. Elhady's arrival.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations. Mr.

Rocky specifically denies being a part of any such communications with Canadian

authorities or related communications with or between other persons, and denies any

personal knowledge of such communications. Mr. Rocky further denies any personal

knowledge of, or participation in, adjusting the temperature in any holding cell to

freezing temperatures in relation to Mr. Elhady or any other person.

31.     Defendants subjected Mr. Elhady to extreme sensory deprivation, psychological torture and isolation (known as "White Torture"), as a form of cruel

and unusual punishment and torture by isolating him in a holding cell for a long
period of time with excessively bright lights and freezing temperatures.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations. Mr.

Rocky further denies any personal knowledge of, or participation in, adjusting the

temperature in any holding cell to freezing temperatures in relation to Mr. Elhady or

any other person, or knowledge of any employee at his place of employment

employing, or attempting to employ, any tactics toward a temporary detainee that

would reasonably be interpreted as any form of torture.

32.    After several hours of being confined in the holding cell, Mr. Elhady
knocked on the door repeatedly and begged for someone to help him and provide
him with medical treatment.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations.

33.    However, Defendants ignored his pleas for help and denied him
medical treatment.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations. Mr.

Rocky specifically denies ever personally ignoring a cry for help from Mr. Elhady.

34.    Mr. Elhady's body began shaking uncontrollably and he felt that his
body was "shutting down."

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

35.     Mr. Elhady thought he was going to die.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

36.     After several hours, Mr. Elhady suffered from hypothermia and he fell unconscious.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

37.     Some time after Mr. Elhady fell unconscious, Defendants finally opened the door and woke him up.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

38.     Defendants demanded that he stand up; however, Mr. Elhady was unable to get up because his body was still shaking uncontrollably.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

39.     Mr. Elhady repeatedly begged for an ambulance to take him to the hospital but Defendants again ignored his pleas for help and medical treatment.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations.

40.    Mr. Elhady suffered from dehydration, shock and hypothermia as a
direct result of the conditions in which he was confined.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations.

41.    Finally, Mr. Elhady was taken to an ambulance, only to be handcuffed
to the bed inside the ambulance.

**Response:**  Admitted that Mr. Rocky arrived on shift at 6 a.m., checked on

Mr. Elhady once, asked Mr. Elhady if Mr. Elhady needed medical assistance, and

when Mr. Elhady stated that he did, Mr. Rocky alerted his supervisors of the

situation, requested such assistance and accompanied Mr. Elhady to the hospital for

treatment; otherwise denied. Admitted that Mr. Elhady was handcuffed to the gurney

while in transit.

42.    Upon information and belief, Defendants Kehr and Rocky handcuffed
Mr. Elhady in the ambulance at the instruction of Defendants Iverson and Lapsley
and accompanied Mr. Elhady to the hospital.

**Response:**   Admitted that Mr. Elhady was handcuffed while in transit.

Admitted that officers Kehr and Rocky were instructed to handcuff Mr. Elhady, as

is standard procedure while transporting a detainee. Mr. Rocky has no knowledge or

information sufficient to form a belief as to whether Defendants Iverson or Lapsley

14

were the person or persons who instructed him to handcuff Mr. Elhady in transit, and therefore denies that allegation.

43.     Mr. Elhady was taken to a local hospital, where he was handcuffed to a chair in the waiting room of the hospital.

**Response:**  Admitted that Mr. Elhady was taken to the hospital and was handcuffed in transit and at the hospital. Denied that Mr. Elhady was handcuffed to a chair; admitted that he was handcuffed to a gurney or bed.

44.     Upon information and belief, Defendants Kehr and Rocky handcuffed Mr. Elhady to a chair in the waiting room at the instruction of Defendants Iverson and Lapsley.

**Response:**  See responses to Interrogatories No. 42 and 43.

45.     Upon being admitted to the hospital, a concerned nurse asked Mr. Elhady why his lips were blue.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

46.     After being administered life-saving treatment and prescribed the medication that he needed, Mr. Elhady was again handcuffed to a chair inside a vehicle and transported back to the Ambassador Bridge.

**Response:**  Admitted that Mr. Elhady was seen in the emergency room and then transported back to the Ambassador Bridge. Admitted that Mr. Elhady was handcuffed in transit. The remaining allegations are denied.

47.     Upon information and belief, Defendants Kehr and Rocky handcuffed Mr. Elhady in the vehicle at the instruction of Defendants Iverson and Lapsley.

**Response:**  See responses to Interrogatories No. 42 and 43.


48.     At no point during the April 11, 2015 incident did Defendants find any contraband or evidence indicating illegal or criminal activity by Mr. Elhady. Per Defendants own TECS records, all searches of Mr. Elhady and his vehicle came back negative.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations.


49.     Upon information and belief, Mr. Elhady was subjected to cruel and unusual punishment and white torture because his name was added to the federal terror watch list, which directs Customs and Border Protection Officers to treat thousands of innocent Americans, including Mr. Elhady, who have never been charged or convicted with any terrorism-related offense, as extremely dangerous.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a

belief as to the truth of these allegations and therefore denies the allegations. Mr.

Rocky further denies personally subjecting Mr. Elhady to any punishment or

participating in, or knowing of, any other unprofessional or illegal actions toward

Mr. Elhady.


**COUNT I**
**VIOLATION OF THE FIFTH AND EIGHTH AMENDMENT TO**
**THE UNITED STATES CONSTITUTION**
**(DUE PROCESS AND CRUEL AND UNUSUAL PUNISHMENT)**

16

50.     Plaintiff hereby re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

**Response:**  Defendant re-alleges and incorporates his foregoing responses.

51.     Under the Eighth Amendment, United States citizens have the right to be free from torture and cruel and unusual punishment.

**Response:**  Admitted.

52.     While the Eighth Amendment only applies to post-conviction criminal punishments, the Fifth Amendment's Due Process Clause prohibits the government from imposing torture or cruel and unusual confinement conditions on all other detainees. *See e.g., City of Revere v. Massachusetts Gen. Hospital*, 463 U.S. 239, 244 (1983) ("due process rights" of an un-convicted person "are at least as great as the Eighth Amendment protections available to a convicted prisoner"); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt."); *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement…the Eighth Amendment standard provides the benchmark for such claims.").

**Response:**   Admitted that the Eighth Amendment only applies to post-conviction criminal punishments, the Fifth Amendment's Due Process Clause prohibits the government from imposing torture or cruel and unusual confinement conditions on all other detainees; otherwise denied to the extent any allegations remain.

53.     The Eighth Amendment also imposes a duty on Defendants to provide humane conditions of confinement, including ensuring, among other things, adequate confinement temperatures and access to medical treatment.

**Response:**  Denied; this is not an action under the Eighth Amendment. As to the other individual defendants, Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

54.     Defendants, acting under color of state law, took Plaintiff into physical custody. In doing so, they established a special custodial relationship with Plaintiff, giving rise to affirmative duties on their part to ensure that Plaintiff is provided with humane conditions of confinement and the necessary medical treatment to secure the constitutionally protected rights identified above.

**Response:**  Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations. Further denied that Mr. Rocky acted under the color of state law.

55.     Defendants, acting under color of state law, violated Plaintiff's above-stated constitutionally protected rights by wrongfully subjecting him to white torture and cruel and unusual punishment, denying him humane conditions of confinement and denying him medical treatment.

**Response:**  Denied. Mr. Rocky did not violate Mr. Elhady's constitutional rights, did not participate in any action toward Mr. Elhady that could reasonably be interpreted as any form of torture, and did not deny Mr. Elhady medical treatment. As to the other individual defendants, Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations. Further denied that Mr. Rocky acted under the color of state law.

56.    Despite Plaintiffs' repeated pleas and requests for help and medical treatment, Defendants failed to take adequate measures to ensure that Plaintiff was being provided with humane conditions of confinement and medical treatment.

**Response:**  Denied. Mr. Rocky did not ignore any pleas or requests from Mr.

Elhady or deny him any humane conditions of confinement or medical treatment. As

to the other individual defendants, Mr. Rocky has no knowledge or information

sufficient to form a belief as to the truth of these allegations and therefore denies the

allegations.


57.    Defendants subjectively perceived, or should have subjectively perceived, Plaintiff's repeated pleas regarding the conditions of his confinement and denial of medical treatment.

**Response:**  Mr. Rocky objects to this allegation as vague and unsupported by

the remaining allegations of the complaint. Mr. Rocky further objects to the

allegation because it is in conflict with previous assertions that he was aware of Mr.

Elhady's pleas and requests. Mr. Rocky is unclear whether he is being accused of

hearing and ignoring Mr. Elhady's pleas and requests, or not hearing them when he

(for unstated reasons) should have heard them. Answering further, denied. Mr.

Rocky did not ignore any pleas or requests from Mr. Elhady or deny him any humane

conditions of confinement or medical treatment. As to the other individual

defendants, Mr. Rocky has no knowledge or information sufficient to form a belief

as to the truth of these allegations and therefore denies the allegations.

58.     Defendants' acts and omissions were sufficiently harmful to evidence a substantial risk of serious harm.

**Response:**  Denied. Mr. Rocky did not ignore any pleas or requests from Mr. Elhady or deny him any humane conditions of confinement or medical treatment, or otherwise violate his rights. As to the other individual defendants, Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

59.     Defendants' acts and omissions were sufficiently harmful to offend evolving standards of decency in violation of the Eighth Amendment.

**Response:**  Denied. Mr. Rocky did not ignore any pleas or requests from Mr. Elhady or deny him any humane conditions of confinement or medical treatment, or otherwise violate his rights. Also denied because the Eighth Amendment is not applicable here. As to the other individual defendants, Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

60.     Defendants' actions while acting under color of state law, in subjecting Plaintiff to white torture, denying him humane conditions of confinement, and denying him medical treatment, amount to cruel and unusual punishment and excessive force in violation of his constitutionally protected rights as stated above.

**Response:**  Denied. Mr. Rocky did not ignore any pleas or requests from Mr. Elhady or deny him any humane conditions of confinement or medical treatment, or otherwise violate his rights. As to the other individual defendants, Mr. Rocky has no

knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations. Further denied that Mr. Rocky acted under the color of state law.

61.     Defendants' conduct as outlined above, was so grossly incompetent, inadequate, or excessive so as to shock the conscience or to be intolerable to fundamental fairness and violates the Eighth Amendment prohibition against cruel and unusual punishment.

**Response:**  Denied. Mr. Rocky did not ignore any pleas or requests from Mr. Elhady or deny him any humane conditions of confinement or medical treatment, or otherwise violate his rights. Also denied because the Eighth Amendment is not applicable here. As to the other individual defendants, Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

62.     Defendants' actions described above were carried out willfully and with wanton disregard and with the spirit of gross negligence, and were the direct and deliberate cause of the constitutional deprivations Plaintiff's liberty and the direct cause of Plaintiff's cruel and unusual punishment and excessive force.

**Response:**  Denied. Mr. Rocky did not ignore any pleas or requests from Mr. Elhady or deny him any humane conditions of confinement or medical treatment, or otherwise violate his rights. As to the other individual defendants, Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

63.    As a direct and proximate result of Defendants' actions described above, Plaintiff was deprived of his constitutionally protected rights as described above, by Defendants.

**Response:** Denied. Mr. Rocky did not ignore any pleas or requests from Mr. Elhady or deny him any humane conditions of confinement or medical treatment, or otherwise violate his rights. As to the other individual defendants, Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

64.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered extreme emotional distress, medical expenses, and other consequential damages.

**Response:** Denied. Mr. Rocky did not ignore any pleas or requests from Mr. Elhady or deny him any humane conditions of confinement or medical treatment, or otherwise violate his rights. As to the other individual defendants, Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations. Mr. Rocky also has no knowledge or information sufficient to form a belief as to the truth of these allegations as to Mr. Elhady's alleged emotional distress, medical expenses, or other damages, and therefore denies the allegations.

65.    Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

**Response:**  Denied. Mr. Rocky did not ignore any pleas or requests from Mr. Elhady or deny him any humane conditions of confinement or medical treatment, or otherwise violate his rights, and is therefore not responsible for any damages sustained by Mr. Elhady, if such damages exist. As to the other individual defendants, Mr. Rocky has no knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the allegations.

WHEREFORE, Plaintiff requests this Honorable Court grant compensatory and punitive damages against Defendants, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

**Response:**  Mr. Rocky requests that the Court dismiss this suit as to Mr. Rocky because he did not participate in any wrongful conduct toward Mr. Elhady.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his favor against Defendants and enter an Order awarding the following relief:

1.      An award of compensatory and punitive damages;
2.      A trial by jury;
3.      An award of attorneys' fees, costs, and expenses of all litigation; and,
4.      All such other and further relief as the Court may deem just and proper.

**Response:**  Mr. Rocky requests that the Court deny all of Mr. Elhady's requests as to Mr. Rocky, because he did not participate in any wrongful conduct toward Mr. Elhady.

## JURY DEMAND

NOW COMES Plaintiff, by and through his undersigned counsel, and hereby demands trial by jury of the above-referenced causes of action.

**Response:** Admitted that Plaintiff is entitled to request trial by jury.

## AFFIRMATIVE DEFENSES

1.    Plaintiff's complaint fails to state a claim upon which relief can be granted.

2.    Mr. Rocky is entitled to immunity granted by law, including but not limited to qualified immunity, quasi-judicial immunity, or governmental immunity.

3.    Plaintiff's injuries, if any, were caused by someone other than Mr. Rocky.

4.    Any force used by Mr. Rocky was legal, reasonable under the circumstances, and not excessive.

5.    Any conditions of confinement that Mr. Elhady was subject to were legal, reasonable under the circumstances, and not unconstitutional.

6.    Mr. Rocky will also rely on any affirmative or other defenses raised by the other individual defendants in this action.

7.    Mr. Rocky reserves the rights to amend or supplement these defenses during the course of discovery.

WHEREFORE, having fully answered Plaintiff's Second Amended Complaint, Defendant Rocky respectfully moves this Court to dismiss Plaintiff's Second Amended Complaint, for its costs incurred herein, and for such further relief as is just and proper.

Respectfully submitted,

**MATTHEW SCHNEIDER**
United States Attorney

By: */s/ James J. Carty*
**JAMES J. CARTY (P74978)**
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Office: (313) 226-9705
Facsimile: (313) 226-3271
Email: james.carty@usdoj.gov
*Attorneys for Defendant*

Dated:  March 13, 2019

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on March 13, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Lena Masri
Gadeir I. Abbas
Ahmed M. Mohamed
Carolyn Homer
***Attorneys for Plaintiff***

*/s/ James J. Carty*
**JAMES J. CARTY (P74978)**
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Office: (313) 226-9705
Facsimile: (313) 226-3271
Email: james.carty@usdoj.gov