# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: November 19, 2021

Mr. Gadeir Ibrahim Abbas
Mr. Justin Mark Sadowsky
Ms. Lena F Masri
Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, DC 20003

Mr. Benjamin Ari Anchill
Mr. James Joseph Carty
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226

Mr. Casen Ross
U.S. Department of Justice
950 Pennsylvania Avenue, N.W., Rm 7270
Washington, DC 20530

      Re: Case No. 20-1339, *Anas Elhady v. Unidentified CBP Agents, et al*
         Originating Case No. : 2:17-cv-12969

Dear Counsel,

  The court today announced its decision in the above-styled case.

  Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

            Yours very truly,

            Deborah S. Hunt, Clerk

            Cathryn Lovely
            Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0268p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

| | | |
|---|---|---|
| ANAS ELHADY, | | |
| | *Plaintiff-Appellee*, | |
| | | ⎫ |
| *v.* | | ⎬ No. 20-1339 |
| | | ⎪ |
| UNIDENTIFIED CBP AGENTS, et al., | | ⎪ |
| | *Defendants*, | ⎪ |
| BLAKE BRADLEY, | | ⎪ |
| | *Defendant-Appellant*. | ⎭ |

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:17-cv-12969—Mark A. Goldsmith, District Judge.

Argued: October 21, 2021

Decided and Filed: November 19, 2021

Before: ROGERS, GRIFFIN, and THAPAR, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Casen B. Ross, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Justin Sadowsky, CAIR LEGAL DEFENSE FUND, Washington, D.C., for Appellee. **ON BRIEF:** Casen B. Ross, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Justin Sadowsky, Lena Masri, Gadeir I. Abbas, CAIR LEGAL DEFENSE FUND, Washington, D.C., for Appellee.

    THAPAR, J., delivered the opinion of the court in which GRIFFIN, J., joined. ROGERS, J. (pp. 11–14), delivered a separate dissenting opinion.

## OPINION

THAPAR, Circuit Judge. In a lawsuit against federal officers, the first question a court should ask is whether a cause of action exists. The district court thought it did. We disagree and reverse.

### I.

Anas Elhady, a United States citizen living in Michigan, drove to Canada to visit friends for the night. But on his return, border-patrol agents stopped him at the border and detained him for questioning.[1] During his detention, the officers took Elhady's jacket and shoes, leaving him wearing only his shirt, pants, undergarments, and socks. Elhady complained to the officers that the cell was cold, asking them to either return his jacket and shoes or provide a blanket. But he claims his requests went unanswered.

According to Elhady, the cell "got colder and colder," and he began shivering uncontrollably. R. 96-1, Pg. ID 1715–16. He says he yelled to the officers that he was freezing and needed to go to the hospital, but they told him not to worry, "you'll be out soon." *Id.* at 1716. Elhady thought the officers were intentionally ignoring his requests. After about four hours, the officers told him he could leave. But he told them he felt too ill to drive and needed to go to the hospital. So the officers called him an ambulance.

In the ambulance, the EMT noted that Elhady was alert, aware of his surroundings, and received the highest score on a test that measured his level of consciousness. The EMT also noted that Elhady had delayed capillary refill, which is consistent with exposure to the cold. But by the time he reached the hospital, his temperature was 96.08 degrees—which is barely below

---

[1] Elhady says that he was detained because he was on the "federal terrorist watchlist." R. 122, Pg. ID 4665. The defendants neither confirmed nor denied this allegation, and the district court noted that Elhady's status on the watchlist was irrelevant for summary judgment. That is so because "searches of people and their property at the borders are per se reasonable, meaning that they typically do not require a warrant, probable cause, or even reasonable suspicion." *United States v. Stewart*, 729 F.3d 517, 524 (6th Cir. 2013) (citing *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004)).

the normal range.  So the treating physician gave him a blanket and let him rest.  When Elhady woke up, the doctor told him he was "good to go."  *Id.* at 1725.

Elhady later sued several border-patrol officers, including Blake Bradley, the lead officer assigned to his case.  Elhady argues that the officers detained him under conditions that violated his Fifth Amendment due-process rights.  And he seeks monetary damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

The defendants filed a motion to dismiss.  Among other arguments, they suggested that applying *Bivens* to these circumstances would constitute an unwarranted extension of the doctrine.  The district court disagreed.  It found that though the case presented a new *Bivens* context, extending *Bivens* to provide an implied cause of action here was nevertheless appropriate.

The district court later granted summary judgment for all defendants except Officer Bradley.  In Bradley's case, the district court found enough evidence to show he had violated Elhady's right to be "free from exposure to severe weather and temperatures."  R. 122, Pg. ID 4691–92.  And because the court also found that this right was clearly established, it held that qualified immunity did not protect Bradley.

Bradley appeals the denial of qualified immunity.  Because the parties' briefs did not address the district court's decision to extend *Bivens*, we asked for supplemental briefing on this question.

II.

The Supreme Court has recognized an implied cause of action to recover damages from federal officers who violate constitutional rights in only three narrow circumstances.  *See Bivens*, 403 U.S. 388 (Fourth Amendment search-and-seizure violation by federal narcotics agents); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment employment-discrimination violation by a United States congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment inadequate-medical-care violation by prison officials).  But as the Court recently reminded us, these cases rest on an outdated conception of our judicial role.  *Hernandez v. Mesa (Hernandez*

*II)*, 140 S. Ct. 735, 741 (2020); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). They were handed down at a time when the Court routinely assumed that it was the judge's job to infer a cause of action whenever a substantive provision may have been violated, even if the text didn't offer one. *Hernandez II*, 140 S. Ct. at 741. Since 1980, however, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); *see also Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020). And that's not for want of opportunity. Indeed, the Court has reviewed the question on ten separate occasions. *Hernandez II*, 140 S. Ct. at 743 (collecting cases). Now the Court urges caution before we expand *Bivens*'s reach. *Malesko*, 534 U.S. at 74.

Why? Because judges interpret laws. We do not make them. *See Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 46 (1825) (Marshall, C.J.) ("The difference between the departments undoubtedly is, that the legislature makes, the executive executes, and the judiciary construes the law."). It is Congress's job to decide when to provide a cause of action against federal employees. After all, that's a quintessentially legislative choice. The decision to bless a cause of action invariably involves "a host of considerations that must be weighed and appraised," including an "assessment of its impact on governmental operations systemwide." *Abbasi*, 137 S. Ct. at 1857–58 (citation omitted). That is not the sort of problem the judiciary is equipped to solve. Article III gives judges life tenure and salary protections. But one thing our commission does not award us is the license—or the competence—to tackle such a thorny task. That enterprise is better left "to those who write the laws rather than those who interpret them." *Id.* at 1857 (cleaned up).

To ensure respect for these foundational principles, the Supreme Court devised a two-part inquiry to determine when we should engage in the "disfavored judicial activity" of recognizing a new *Bivens* action. *See id.* And under this exacting test, the answer will almost always be never.

First, we ask whether the claim arises in a new *Bivens* context. And our "understanding of a 'new context' is broad." *Hernandez II*, 140 S. Ct. at 743. The context is new if it differs in virtually any way from the *Bivens* trilogy. *Abbasi*, 137 S. Ct. at 1859.

If the context does differ, we move to the second question: whether any special factors counsel against extending a cause of action. *Id.* at 1860. The Supreme Court has "not attempted to create an exhaustive list of factors," but it has explained that the separation of powers should be a guiding light. *Hernandez II*, 140 S. Ct. at 743 (cleaned up) (quoting *Abbasi*, 137 S. Ct. at 1857). For that reason, the Court has told us that we must not create a cause of action if there's "a single sound reason" to leave that choice to Congress. *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021). That's because we're not well-suited to decide when the costs and benefits weigh in favor of (or against) allowing damages claims. *Cf. Abbasi*, 137 S. Ct. at 1857–58. And trying to make those decisions would disrespect our limited role under the Constitution's separation of powers, even if we think it would be good policy to do so. *Hernandez II*, 140 S. Ct. at 731.

The district court found that *Bivens* extends to Elhady's claims. And Elhady suggests that we shouldn't review that decision. So before analyzing the *Bivens* question itself, we consider whether it is proper for us to do so.

A.

Elhady gives two reasons why we shouldn't review the *Bivens* question at this time.

First, he contends that we lack jurisdiction to consider the availability of a *Bivens* cause of action on an interlocutory appeal of qualified immunity. But as the Court has explained, appellate courts have jurisdiction over the *Bivens* issue on interlocutory appeal because the question is "directly implicated by the defense of qualified immunity." *Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007) (citation omitted); *cf. Koubriti v. Convertino*, 593 F.3d 459, 466 (6th Cir. 2010).

Second, Elhady argues that Bradley forfeited the issue because he did not challenge the district court's finding on appeal.[2] Not so. A cause of action's availability under *Bivens* is an "antecedent" question that we can address even if it was not raised below. *Hernandez v. Mesa*

---

[2]Elhady describes Bradley's failure to raise the issue as waiver. But we have previously clarified that waiver is "affirmative and intentional," whereas forfeiture is "a more passive 'failure to make the timely assertion of a right.'" *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (quoting *United States v. Olano*, 570 U.S. 725, 733 (1993)). So forfeiture is the proper term here.

No. 20-1339  *Elhady v. Unidentified CBP Agents, et al.*  Page 6

*(Hernandez I)*, 137 S. Ct. 2003, 2006–07 (2017) (per curiam). Indeed, the Supreme Court has already paved this particular path. *See, e.g.*, *Carlson*, 446 U.S. at 17 n.2; *see also* Adrian Vermeule, *Saving Constructions*, 15 Geo. L.J. 1945, 1948–49 & n.20 (1997) (citing several cases where the Supreme Court decided the matter on "an antecedent statutory issue, even one waived by the parties, if its resolution could preclude a constitutional claim"). So we may address the question. But should we?

In short, yes. In *Hernandez v. Mesa (Hernandez I)*, the Court advised lower courts in our position—that is, reviewing an interlocutory appeal of qualified immunity—to first consider the *Bivens* question. *See* 137 S. Ct. at 2007–08. There, the Fifth Circuit resolved the case based on qualified immunity's clearly established prong. *See Hernandez v. United States*, 785 F.3d 117, 120–21 (5th Cir. 2015) (en banc). The Supreme Court disagreed with that approach. The Court explained that, while it had assumed a cause of action in prior cases, it is often imprudent to do so. *Hernandez I*, 137 S. Ct. at 2007. So the Court vacated the Fifth Circuit's judgment and remanded for it to address whether *Bivens* provided a cause of action. *Id.* at 2008.

Prudence demands we follow suit here. To bypass the *Bivens* question would "allow new causes of action to spring into existence merely through the dereliction of a party." *Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018). It would also risk "needless expenditure" of time and money in cases like this one, where Supreme Court precedent can easily resolve *Bivens*'s applicability. *See id.* at 89 (citing *Carlson*, 446 U.S. at 17 n.2). Why analyze qualified immunity when it is an utterly unnecessary exercise?

Constitutional structure points the same way. Plaintiffs like Elhady often have no cause of action unless we extend *Bivens*. And if there is no cause of action, courts should stop there. After all, Article III bars federal courts from giving "opinions advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see Angulo v. Brown*, 978 F.3d 942, 953–54 (5th Cir. 2020) (Oldham, J., concurring in part). Any qualified-immunity conclusion here is hypothetical if Elhady can't sue.

The risk of issuing an advisory opinion is compounded in this context because addressing qualified immunity involves answering a *constitutional* question. And the constitutional-

avoidance doctrine directs federal courts to sidestep constitutional questions whenever "there is some other ground upon which to dispose of the case." *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam); *Angulo*, 978 F.3d at 954 (Oldham, J., concurring in part); *see also Torres v. Precision Indus., Inc.*, 938 F.3d 752, 754–55 (6th Cir. 2019). Perhaps for this reason, other circuits to review forfeiture in this context have come to the same result. *See, e.g.*, *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020); *Bistrian*, 912 F.3d at 88–89. Thus, we begin by focusing on the *Bivens* question.

B.

The district court determined that *Bivens* should extend here. To be fair, it made that determination before *Hernandez II*, 140 S. Ct. 735. That case involved a border-patrol agent who shot across the border and killed a fifteen-year-old boy. His parents sued, claiming that the agent violated the Fourth and Fifth Amendments. *Id.* at 740, 743. The case first reached the Supreme Court on a qualified-immunity appeal. As explained above, the Court remanded for the Fifth Circuit to decide whether *Bivens* extended to these facts. The lower court held it didn't. *Hernandez v. Mesa*, 885 F.3d 811, 823 (5th Cir. 2018) (en banc). And the Supreme Court granted certiorari once more to review that decision. *Hernandez v. Mesa*, 139 S. Ct. 2636 (2019) (mem.).

The Court started with the first part of the *Bivens* framework. It explained that a case may present a new context even if the claim involves one of the constitutional provisions from the original trilogy. *Hernandez II*, 140 S. Ct. at 743. So even though *Hernandez II* involved the same provisions as in *Bivens* and *Davis*—the Fourth and Fifth Amendments respectively—the plaintiffs were not guaranteed a cause of action.

Instead, the Court dug deeper, comparing the facts of *Hernandez* to those cases: *Bivens*, which involved an arrest carried out in New York City, and *Davis*, which involved sex-discrimination allegations on Capitol Hill. *Id.* at 743–44. The Court concluded, "There is a world of difference between those claims and petitioners' cross-border shooting, where 'the risk of disruptive intrusion by the Judiciary into the functioning of other branches' is significant." *Id.*

Case 2:17-cv-12969-MAG-APP ECF No. 132, PageID.4719 Filed 11/19/21 Page 10 of 17
Case 2:17-cv-12969-AG-APP Doc. No. 132, Pg. 4718 Filed 11/19/21 Page: 8 (10 of 17)

No. 20-1339         *Elhady v. Unidentified CBP Agents, et al.*         Page 8

at 744 (quoting *Abbasi*, 137 S. Ct. at 1860). In this way, the Court made clear that border-related disputes always present a new *Bivens* context.

The Court next considered special factors warning against *Bivens*'s extension. Of paramount concern was national security. *Id.* at 746–47. Describing the "daunting task" of preventing the illegal entry of dangerous people and goods, the Court recognized that what federal agents do at the border "has a clear and strong connection to national security." *Id.* at 746. For border-patrol officers respond to "terrorists, drug smugglers and traffickers, human smugglers and traffickers, and other persons who may undermine the security of the United States." *Id.* (quoting 6 U.S.C. § 211(c)(5)). In contemplating questions of national security, the Court noted that such decisions are typically the province of Congress and the President. *Id.* And for good reason. Foreign-policy and national-security decisions are "delicate, complex, and involve large elements of prophecy for which the Judiciary has neither aptitude, facilities, nor responsibility." *Id.* at 749 (cleaned up).

With these considerations in mind, the Court declined to find an implied cause of action. When considering whether to extend *Bivens*, the Court explained that "the most important question" is whether courts should make that call. *Id.* at 750. The correct answer will almost always be no. *Id.* That was "undoubtedly the answer" in *Hernandez II*. *Id.*

And that is undoubtedly the answer here. First, Elhady's claims occurred in what *Hernandez II* recognized as a "markedly new" *Bivens* context: the border. *Id.* at 739. That context is new regardless of what constitutional claim is at issue. *See id.* at 743–44. Indeed, the district court recognized—even before *Hernandez II* came down—that claims against border-patrol agents constitute a new *Bivens* context.[3]

And second, *Hernandez II* made clear that national security will always be a special factor counseling against extending *Bivens* to the border context. *Id.* at 747 ("Since regulating conduct of agents at the border unquestionably has national security implications, the risk of

---

[3]The district court determined that the context was also new because "the Supreme Court has never acknowledged a *Bivens* claim for the Fifth Amendment right to be free from non-punitive claims of abuse." R. 46, Pg. ID 684.

undermining border security provides reason to hesitate before extending *Bivens* into this field."). That is true regardless of whether the plaintiff is a United States citizen.

The district court, however, believed that the defendants had "offered no plausible explanation why intentionally placing a detainee in a freezing-cold holding cell protects national security." R. 46, Pg. ID 688. But as the Supreme Court instructed in *Hernandez II*, "[t]he question is not whether national security requires such conduct—of course, it does not—but whether the Judiciary should alter the framework established by the political branches for addressing cases . . . at the border." 140 S. Ct. at 746. The Court made its answer to that question clear: It should not.

Nor does it matter that this case is not a carbon copy of *Hernandez II*. *Hernandez II* involved a cross-border shooting whereas this case concerns conditions of confinement in a stateside facility; *Hernandez II* involved a Mexican citizen whereas this case involves a United States citizen. Such differences are of no moment. What matters is that both cases involve claims against border-patrol officers serving in their capacity as agents protecting the border. In this context, the Supreme Court has spoken: *Bivens* is unavailable. *See id.* at 747.

Moreover, we are in good company here. Every other circuit (except the Ninth) faced with an invitation to expand *Bivens* to the border/immigration context has held firm. In a suit brought by a United States citizen against immigration officials for alleged Fourth Amendment violations, the Fourth Circuit refused to extend *Bivens*. *Tun-Cos v. Perrotte*, 922 F.3d 514, 528 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020). The Fourth Circuit reiterated that the Supreme Court has "expressed open hostility to expanding *Bivens* liability," especially in the immigration context. *Id.* at 521 (citing *Abbasi*, 137 S. Ct. at 1856). The Fifth Circuit also refused to extend *Bivens*'s reach to cover border-patrol agents after noting that Congress had already provided plaintiffs with an alternative scheme of administrative and remedial procedures under the Immigration and Nationality Act. *Maria S. v. Garza*, 912 F.3d 778, 784 (5th Cir.), *cert. denied*, 140 S. Ct. 81 (2019). And the Eleventh Circuit refused to infer a cause of action against immigration agents in the Fourth Amendment context for similar reasons. *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1206 (11th Cir. 2016).

Recently, the Ninth Circuit parted company with these circuits over three thoughtful dissentals (signed by twelve judges). *Boule v. Egbert*, 998 F.3d 370 (9th Cir. 2021). But that opinion is no longer on the books because the Supreme Court has since granted certiorari. *Egbert v. Boule*, No. 21-147, --- S. Ct. ---, 2021 WL 5148065 (Nov. 5, 2021) (mem.).

In short, when it comes to the border, the *Bivens* issue is not difficult—it does not apply. And district courts would be wise to start and end there.

\*   \*   \*

We reverse and remand for the district court to enter final judgment for Bradley.

# DISSENT

ROGERS, Circuit Judge, dissenting. By choosing not to raise the issue on appeal, defendant Bradley, represented by the Department of Justice, forfeited his argument that Elhady does not have a cause of action under *Bivens*. As a general rule, we do not reach forfeited arguments. That rule should apply especially in cases such as this one, which involves a difficult question about the reach of *Bivens* that the Government repeatedly declined to ask us to address.

Bradley's Government-provided counsel explicitly decided not to raise on this appeal the argument that there is no *Bivens* cause of action. "It is well settled that an argument not raised on direct appeal is forfeited." *United States v. Fleischer*, 971 F.3d 559, 569 (6th Cir. 2020) (quoting *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999)); *see also Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021). The defendants raised the *Bivens* issue in their motion to dismiss in the district court. In Bradley's brief on appeal, however, Government-provided counsel mentioned the district court's rejection of its *Bivens* argument and then declined to reassert that argument. Bradley's counsel instead assumed that there was a cause of action and proceeded to argue on the merits that Bradley was entitled to qualified immunity.

We have addressed forfeited arguments in some "exceptional cases . . . or when the rule [of not reaching them] would produce a plain miscarriage of justice," but that is not the case here. *See Johnson v. Ford Motor Co.*, 13 F.4th 493, 504 (6th Cir. 2021) (quotation omitted). At oral argument, Bradley's Government counsel explicitly confirmed that it did not appeal the *Bivens* issue and repeatedly declined to answer whether we should decide it. Counsel stated that "Bradley has not appealed that question, and I am authorized by the Solicitor General to appeal the question of qualified immunity. So it is within the court's discretion to take up this antecedent issue, but we have not urged the court to do so." There is no "plain miscarriage of justice" or other extenuating circumstance when the party is given several opportunities to ask the court to consider the argument and continues to decline.

The Supreme Court has emphasized that it is often appropriate to decline to reach the *Bivens* issue when the case can be decided on other grounds. The Court noted in *Hernandez v. Mesa* that "[t]his approach—disposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy—is appropriate in many cases. This Court has taken that approach on occasion." 137 S. Ct. 2003, 2007 (2017) (citing *Wood v. Moss*, 572 U.S. 744, 756-57 (2014)). More pointedly, the Supreme Court has cautioned us against reaching an issue that the Government actively and "intelligently" decides not to argue. *See Wood v. Milyard*, 566 U.S. 463, 465-466 (2012). In *Wood v. Milyard*, the Court concluded that the State waived a statute of limitations defense in a habeas corpus case by "twice inform[ing] the District Court that it 'will not challenge, but [is] not conceding'" the issue. *Id*. at 474. Despite the State's clear decision not to raise the argument, the Tenth Circuit "directed the parties to brief the question" and resolved the case on the statute of limitations issue. *Id*. at 465. The Court held that the Tenth Circuit abused its discretion and should have reached the merits, because "[a] court is not at liberty . . . to bypass, override, or excuse a State's deliberate waiver of a limitations defense." *Id*. at 466. The Court emphasized that the State's "decision not to contest the timeliness . . . did not stem from an 'inadvertent error,'" but rather that the State "express[ed] its clear and accurate understanding of the timeliness issue" and still "deliberately steered the District Court away from the question and towards the merits." *Id*. at 474.

Whether Elhady has a cause of action under *Bivens* is a close question, and in light of the Supreme Court's guidance in *Wood v. Milyard*, it is imprudent to decide such a difficult issue when the Government explicitly declined to ask us to consider it. *Hernandez v. Mesa* and this case both involve border patrol officials and incidents that occurred close to the border. *See* 140 S. Ct. 735, 740 (2020). But there are also critical factual differences. The cross-border shooting in *Hernandez* caused the death of a Mexican citizen on Mexican soil, an "international incident" that caused a real diplomatic dispute between the United States and Mexico that should be, and was being, "addressed through diplomatic channels." *See id*. at 744-45. The Supreme Court focused on "the potential effect on foreign relations," and emphasized that "[t]he political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns." *Id*. at 744 (quotation omitted). The Court also found relevant several statutory provisions that specifically distinguish claims that have international elements from claims that

do not. *See id.* at 747-49. This case involves the alleged treatment of a U.S. citizen within the United States. The facts here are also very different from those in *Ziglar v. Abbasi*, in which the plaintiffs were foreign nationals residing illegally in the United States and were detained in the immediate aftermath of 9/11 based on suspected ties to terrorism. *See* 137 S. Ct. 1843, 1852-53 (2019). Bradley has not argued that any national security or foreign relations circumstances impacted this case in particular. The facts indicate that Elhady was an American college student who was detained within the United States without any explanation or apparent justification. That arguably makes this case more analogous to *Bivens* itself, in which federal agents abused a U.S. citizen in his home and in a court building in New York. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971); *see also Jacobs v. Alam*, 915 F.3d 1028, 1038-39 (6th Cir. 2019). Although the Court has recently limited the reach of *Bivens*, it does not necessarily follow that U.S. citizens have no remedy if they are abused within the United States by their own border patrol officials. It is thus imprudent to reach the difficult *Bivens* question on this appeal when Government counsel for Bradley repeatedly indicated that he was not raising the issue.

On a related but different point, even assuming we should reach the *Bivens* issue, our decision should not be read to say that the first question for a court to ask in any lawsuit against federal officers must be whether a cause of action exists. In civil litigation generally there is no requirement, and certainly no Article III requirement in a federal court, that any non-jurisdictional threshold legal issue—for instance, whether a statute of limitations has run, or whether a defendant has some sort of immunity—must be decided before a merits issue, or vice versa. The first *Hernandez* case itself, and the *Wood v. Moss* case that it distinguishes, make clear that the decision is one of prudence rather than legal requirement. In a habeas corpus case, to give another example, a court may decide the merits of a habeas corpus issue without first deciding a threshold, non-jurisdictional procedural issue, especially if the threshold issue is complex. *See, e.g.*, *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *LaMar v. Houk*, 798 F.3d 405, 415 (6th Cir. 2015). This is so, moreover, even if the habeas merits issue is constitutional, and the procedural default issue is not. *See, e.g., LaMar*, 798 F.3d at 415; *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

No. 20-1339 *Elhady v. Unidentified CBP Agents, et al.* Page 14

Finally, this dissent for completeness requires an indication of what the proper ruling on the merits of the qualified immunity issue is, notwithstanding the fact that the analysis in the lead opinion does not require that the issue be reached. On interlocutory appeal we are bound by the facts as to which the district court found there was a genuine issue. *See Johnson v. Jones*, 515 U.S. 304, 319-20 (1995); *see also Kindl v. City of Berkley*, 798 F.3d 391, 398 (6th Cir. 2015). Those facts include that "he was placed in a cell at freezing or near-freezing temperatures for at least four hours" and was denied his jacket, shoes, or a blanket. The district court, in a thoughtful opinion based on the totality of these facts, determined that defendant Bradley may have violated Elhady's Fifth Amendment due process rights. I would affirm this interlocutory order on that ground for the reasons given by the district court. *See Elhady v. Bradley*, 438 F. Supp. 3d 797 (E.D. Mich. 2020). The *Bivens* issue may be resolved later in the litigation, but only if necessary (which may not be the case), and if preserved.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 20-1339

ANAS ELHADY,

    Plaintiff - Appellee,

v.

UNIDENTIFIED CBP AGENTS, et al.,

    Defendants,

BLAKE BRADLEY,

    Defendant - Appellant.

**FILED**
Nov 19, 2021
DEBORAH S. HUNT, Clerk

Before: ROGERS, GRIFFIN, and THAPAR, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED and REMANDED for further proceedings consistent with the opinion of this court.

                              **ENTERED BY ORDER OF THE COURT**

                              Deborah S. Hunt, Clerk